WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leo Murphy,<br><br>    Plaintiff,<br><br>v.<br><br>R Squared Electric LLC,<br><br>    Defendant. | No. CV-19-05646-PHX-DLR<br><br>**ORDER** |

Before the Court is R Squared Electric LLC's ("RE") motion for summary judgment, which is fully briefed. (Docs. 54, 61, 62, 70.) RE's motion for summary judgment is granted, as described below.

**I. Background**

The undisputed facts are that in March 2017, Hector Manuel Jaramillo, superintendent in charge of the RE Tenant Improvement Department ("TID"), interviewed and hired Mr. Murphy as an electrician and the only African-American employee during the period. (Doc. 1 at 3; Doc. 54-1 at 12.) Two months later, Michael Casas, the manager of RE's Service Department ("SD"), sought an experienced electrician to join the SD. (Doc. 54-1 at 39.) Mr. Jaramillo told Mr. Murphy about the open position, and, noting a slowdown in the TID, encouraged him to apply. (*Id.* at 13, 17-18.) Mr. Casas interviewed Mr. Murphy and offered him the position along with a raise, which Mr. Murphy accepted. (*Id.* at 11, 18, 39.)

Mr. Murphy's time at the SD was not without incident. (*Id.* at 60-61.) Following a July 2017 writeup for poor communication, Mr. Murphy complained of discrimination to RE's owner, Ben Reynolds. (*Id.*) He also went to an urgent care on September 27, 2017, believing he was having heart palpitations due to work-related stress. (*Id.* at 20-21.) In January 2018, Mr. Casas suspended Mr. Murphy without pay for the week of January 8 through January 13, 2018, citing his repeated failure to answer the phone and return missed calls while on call. (*Id.* at 48.) Four months later, Mr. Casas wrote up Mr. Murphy a second time for the same shortcoming. (*Id.* at 50.) At this juncture, Mr. Casas and Mr. Murphy agreed that he would be a better fit in the TID, and Mr. Casas initiated his transfer. (*Id.* at 45-46.)

Mr. Jaramillo accepted Mr. Murphy back into the TID while preserving his higher pay rate. (*Id.* at 46, 50.) But Mr. Jaramillo also began cutting Mr. Murphy's hours, explaining that RE could not find Mr. Murphy sufficient work considering his relatively hourly rate and the needs of the declining number of projects for the TID. (*Id.* at 62, 66.) On November 15, 2018, citing lack of work, Mr. Jaramillo laid Mr. Murphy off. (*Id.* at 33, 66.)

Two months later, Mr. Murphy filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation. (*Id.* at 31.) He filed the instant lawsuit in November 2019, bringing two claims against RE under 42 U.S.C. § 1981: (1) race discrimination (disparate treatment/wrongful discharge) and (2) retaliation. (Doc. 1.) On April 30, 2021, RE filed its motion for summary judgment, which is now ripe.

**II. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And "conclusory allegations, unsupported by facts are insufficient to survive a motion for summary judgment." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**III. Discussion**

    **A. Race discrimination**

Mr. Murphy alleges race discrimination based on conduct by Mr. Casas and Mr. Jaramillo. Title VII discrimination claims are governed by the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff bears the initial burden of demonstrating a prima facie case of discrimination by showing that he: (1) is a member of a protected class, (2) is qualified for his job, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside his protected class. *Id.* If a plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If the defendant does so, the plaintiff bears the burden to create a

genuine dispute of material fact as to whether the defendant's proffered reason was pretextual. *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir 1993). A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094-95 (9th Cir. 2005). A "plaintiff need offer very little direct evidence to raise a genuine issue of material fact" but, when relying on circumstantial evidence, only "specific and substantial" evidence may defeat summary judgment. *Id.* at 1095 (internal quotations and citations omitted). The circumstantial evidence may show bias by providing sufficiently probative statistical evidence or by establishing that the employer's neutral explanation is "unworthy of credence." *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

Mr. Murphy meets his prima facie burden. As an African-American, he belongs to a protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031 (9th Cir. 2006). No one disputes that Mr. Murphy was qualified for his position. As for an adverse employment action, he was laid off, written up, and worked reduced hours. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (broadly construing adverse actions to include even undeserved negative performance reviews). Finally, he alleges three instances of disparate treatment: (1) Mr. Casas wrote him up for a botched circuit-breaker job but did not write up a Caucasian coworker, (2) Mr. Casas wrote him, but not non-African-American employees, for missing phone calls, and (3) Mr. Jaramillo gave more hours to Anthony Mills, a Caucasian electrician with a higher salary than Mr. Murphy, around the time Mr. Murphy was laid off. (Doc. 5 ¶ 8, 19; Doc. 61-1 at 4 ¶ 6; Doc. 61-3 at 4, 8)

But RE also meets its burden to provide a race-neutral rationale for each adverse employment outcome. For Mr. Jaramillo's decision to lay off Mr. Murphy and give him fewer hours, RE explains there was less work available. When confronted with dwindling contracts, Mr. Jaramillo considered the skills needed for the project and the available budget for the project. (Doc. 54-1 at 35.) Mr. Murphy earned a relatively high hourly

- 4 -

wage. (Doc. 54-1 at 36.) For the phone-related writeups, Mr. Casas explained that he did not write Mr. Murphy up only because he missed calls; rather, he wrote Mr. Murphy because he failed to timely return the missed calls, unlike the other employees who returned missed calls with alacrity. (Doc. 54-1 at 43-44.) As for the writeup about the circuit-breaker, Mr. Casas presented evidence that he verbally warned the Caucasian employee for improper supervision and wrote Mr. Murphy up for "improper wiring." (Doc. 61-3 at 19.)

Now Mr. Murphy must prove these explanations are pretextual, and if the "same-actor inference" applies, his "burden is especially steep." *Coghlan*, 413 F.3d at 1096. The same-actor inference applies "where the same actor who hired" the discrimination plaintiff also caused the adverse employment action "within a short period of time." *Id.*; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1286 (9th Cir. 2000) (applying same-actor inference to a time span greater than one year).

The same-actor inference applies here. Mr. Casas hired Mr. Murphy onto the SD and wrote him up within a year. (Doc. 54-1 at 39, 45-46.) The same is true for Mr. Jaramillo: he hired and laid off Mr. Murphy within two years, and in the interim he facilitated Mr. Murphy's promotion to the SD and a raise. (*Id.* at 12, 32-33, 39, 45.) The same-actor inference applies equally to Mr. Casas and Mr. Jaramillo because both displayed the "initial willingness to hire" Mr. Murphy—constituting "strong evidence that [they are] not biased against the protected class to which [Mr. Murphy] belongs"—and shortly thereafter took an adverse employment action against him. *Id.*

Now triggered here, the same-actor inference creates "a strong inference" that the employer took "no discriminatory action" and "is not biased against the protected class to which the employee belongs." *Coughlan*, 413 F.3d at 1096. Thus, Mr. Murphy cannot avoid summary judgment unless he presents a "strong case of bias." *Id.*

Against Mr. Jaramillo, Mr. Murphy proffers direct and circumstantial evidence. For direct evidence, Mr. Murphy points to a text message Mr. Jaramillo sent to him, "for leo fundillo." (Doc. 61 at 15.) Mr. Jaramillo insists "for leo fundillo" resulted from a talk-to-text typo of his intended response, "For real, Leo," (Doc. 61-1 at 25) but Mr. Murphy, who

speaks no Spanish, asserts without evidence that "fundillo" is Spanish slang for "lazy ass bum" (Doc. 61 at 15). The Court notes, however, the Collins Dictionary's English translation of the Spanish word "fundillo": "seat," "backside," "bum," or "ass." Collins Dictionary, *Fundillo*, https://www.collinsdictionary.com/us/dictionary/spanish-english/fundillo; *see also* Urban Dictionary, *Fundillo* (2014-2019), https://www.urbandictionary.com/define.php?term=Fundillo.

The dispute over whether Mr. Jaramillo's text message was a typo or deliberate insult is immaterial. Even if Mr. Jaramillo had intended to call Mr. Murphy a "lazy ass bum," as Mr. Murphy alleges, nothing about the insult is racialized. No reasonable juror could conclude that this text message constitutes evidence of direct racial animus.

With the direct evidence unavailing, only two pieces of circumstantial evidence remain: (1) receiving fewer hours than a Caucasian coworker with a higher hourly wage and (2) being laid off while working as the only African-American of fifteen employees at the SD. "Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present 'specific' and 'substantial' facts showing that there is a genuine issue for trial. *Noyes v. Kelly Services*, 488 F.3d 1163, 1170 (9th Cir.2007). Mr. Murphy attacks the hours explanation by pointing out that the Caucasian worker had a higher hourly wage, but this does not discredit Mr. Jaramillo's explanation that he allocated hours not only considering budgetary constraints but also the skills needed to complete the project. (Doc. 54-1 at 35.) Mr. Murphy fails to show pretext for being laid off as well. Laying off the only African-American employee of fifteen employees does not show a pattern of discrimination that would raise the specter of pretext. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 663 (9th Cir. 2002) (holding that forty to fifty employees constituted too small a sample from which to make a statistical argument of discrimination). No reasonable juror could, in light of the same-actor inference, find that Mr. Jaramillo's neutral reasons were mere pretext.

Mr. Murphy also fails to show pretext for the adverse employment actions under Mr. Casas. Regarding the writeups for poor communication, Mr. Murphy does not

controvert Mr. Casas' explanation that he wrote Mr. Murphy up in part for not returning calls and that the other employees all returned missed calls promptly. (Doc. 54-1 at 43-44.) As for the botched circuit-breaker writeup, Mr. Murphy proffers only one piece of circumstantial evidence to prove bias: that Mr. Casas did not write up a Caucasian employee for the same error for which he wrote up Mr. Murphy, installing a malfunctioning circuit breaker. But this does not present the "strong case of bias" necessary to defeat the same-actor inference that Mr. Casas did not take discriminatory action. *Coughlan*, 413 F.3d at 1098. Mr. Murphy does not dispute that he installed a malfunctioning circuit breaker, nor does he point to a pattern of disciplining only black employees. Nor does he dispute that Mr. Casas took disciplinary action against the Caucasian employee. No reasonable juror would find that Mr. Casas' explanation was mere pretext.

Because Mr. Murphy cannot meet his burden to show that Mr. Jaramillo and Mr. Casas' neutral explanations were mere pretext, RE is entitled to summary judgment on Mr. Murphy's race discrimination claim. *Celotex*, 477 U.S. at 322.

**B. Retaliation**

Mr. Murphy's retaliation claims pertain to Mr. Reynolds and Mr. Jaramillo. (Doc. 61 at 16-17.) To establish a prima facie case of unlawful retaliation, a plaintiff must show that (1) he engaged in protected activity, (2) he thereafter was subjected by his employer to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). A protected activity must relate either to an employee's opposition to a practice made unlawful by Title VII, or the employee's participation in an investigation, proceeding, or hearing under one of those acts. 42 U.S.C. § 2000e-3(a).

First, Mr. Reynolds. Sometime in summer 2017,[1] Mr. Murphy complained to Mr. Reynolds that Mr. Jaramillo was discriminating against him, and Mr. Reynolds declined to

---

[1] RE argues a two-year statute of limitations bars "events occurring before November 19, 2017." (Doc. 54 at 6.) This is wrong. The 1991 amendment to the Civil Rights act imposes a four-year statute of limitations to post-contract formation conduct. *See Camacho v. City of Tolleson*, No. CV-07-1261-PHX-DGC, 2008 WL 2275575, at *2 (D. Ariz. June 3, 2008).

- 7 -

rehire Mr. Murphy in winter 2018, satisfying elements one and two.  (Doc. 61 at 8, 13-14.)  For element three, Mr. Murphy infers causality merely from the fact that he complained a year before he was not hired.  No reasonable juror could find that Mr. Murphy established causality on these facts.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (holding that a year-and-a-half delay between protected activity and adverse employment action, on its own, does not prove causation).

Second, Mr. Jaramillo.  Mr. Murphy contends that Mr. Jaramillo laid him off in winter 2018 in retaliation for a text message he sent to Mr. Jaramillo eight days earlier: "I have a living I have to maintain.  I can't work part-time.  I have more seniority than a lot of guys here at this company, and they're getting 40 hours.  Why am I being singled out?" (Doc. 61 at 16; Doc. 61-1 at 24.)  But Mr. Murphy's text message does not communicate concerns about actual or perceived racial discrimination, and complaining about hours, alone, is not protected activity unless the complaint also communicates concerns about unlawful discrimination. *See Adams v. Arizona Senate*, No. CV-17-00822-PHX-DLR, 2020 WL 10818235, at *1 (D. Ariz. Mar. 24, 2020) (citing *Coleman v. Home Health Resources Inc.*, 269 F.Supp.3d 935, 942 (D. Ariz. 2017)).  In the alternative, Mr. Murphy claims that Mr. Jaramillo laid him off in winter 2018 in retaliation for the summer 2017 complaint against him.  (Doc. 61 at 16.)  As above, that timeline is too attenuated to establish causation.  *See Villiarimo*, 281 F.3d at 1065.

**III. Conclusion**

For the foregoing reasons, RE is entitled to summary judgment on Mr. Murphy's race discrimination and retaliation claims.  With no surviving theory of liability, the Court does not address economic damages or damages for emotional distress.

/ / /

/ / /

/ / /

**IT IS ORDERED** that RE's motion for summary judgment (Doc. 54) is **GRANTED**.  The Clerk shall enter judgment accordingly and terminate this case.

Dated this 19th day of October, 2021.

Douglas L. Rayes
United States District Judge